UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA L. BAGI,

   Plaintiff,

v.

   File No. 1:12-CV-214

   HON. ROBERT HOLMES BELL

AT&T MOBILITY SERVICES LLC, a
Foreign Limited Liability Company,

   Defendant.
_____/

# O P I N I O N

This matter is before the Court on Defendant AT&T Mobility Services LLC's motion for summary judgment. (Dkt. No. 24.) For the reasons that follow, the motion will be denied.

## I.

Plaintiff Amanda L. Bagi filed this action against AT&T Mobility, alleging that AT&T Mobility terminated her employment in retaliation for her exercise of her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq*.

Plaintiff began working for AT&T Mobility as a sales representative in 2003. In January 2011, after working as a sales representative, a sales coach, and an RCM,[1] Plaintiff became a retail account executive ("RAE"). As a retail account executive, Plaintiff reported

---

[1] Plaintiff could not remember what the acronym stood for. (Bagi Dep. 13.)

to Area Retail Sales Manager ("ARSM") Jon Breier. Plaintiff worked out of her home and was responsible for promoting the sale of AT&T products at 20 retail stores. (Bagi Dep. 20-22.)

In March 2011, Plaintiff notified Breier that she would likely be needing surgery. (Bagi Dep. 91-92.) In April, Plaintiff confirmed with Breier that she would need a hysterectomy and that she would not be able to work for six weeks. (Bagi Dep. 92.) According to Plaintiff, Breier responded by asking whether Plaintiff could return to work earlier or whether she could reschedule the surgery. (Bagi Dep. 92.) Breier denies making any such remark. (Breier Dep. 96.) On April 29, 2011, Breier received a "Reported Disability Claim Notice," formally informing him of Plaintiff's upcoming FMLA leave.

On May 2, 2011, Breier had an in-person meeting with Plaintiff to counsel her on her performance. (Breier Dep. 22-23.) According to Breier, he discussed complaints he had received from some of her retail stores, her need to do more training and sales development as opposed to discussing personal information, his expectations about communicating her schedule, and the particular need to be careful in her interactions with Cellular Advantage. (Breier Dep. 23-25.) Plaintiff did not recall discussing these topics, but she did recall that Breier asked her to organize a training at Cellular Advantage. (Bagi Dep. 43.)

On May 4, Breier had a conference call with Plaintiff and two other retail account executives (Michelle Iocca and David Glinsky) who were scheduled to attend Plaintiff's upcoming training on wired products at Cellular Advantage. During the telephone conference, Plaintiff advised Breier that Cellular Advantage intended to have a bowling or

2

golfing team-building event after the training. Breier testified that he told his staff that he was not comfortable with his people attending this event and that he would not be attending the event. (Breier Dep. 51-52. ) Iocca did not recall Breier's exact words, but she understood that he did not want them to attend the golf outing. (Iocca Dep. 15.) Plaintiff testified that Breier told her that she could attend the golf outing, but that she just needed to be professional. (Bagi Dep. 58.)

On Monday, May 9, Plaintiff failed to send her weekly schedule to Breier, but she did send him an email referencing the meeting with the Cellular Advantage management team on Wednesday, May 11. (Def. Ex. 2, 5/9/11 email; Breier Dep. 92.) On Wednesday, May 11, Plaintiff conducted the training at Cellular Advantage and then attended the Cellular Advantage golf outing. When Breier learned that she was attending the golf outing, he texted Plaintiff from his mobile phone:

> Breier: So no schedule and apparently today was a half day.
>
> Plaintiff: I thought you said it was ok to do the cell advantage outing. I can put it as vl time. Was it not ok and I missed it?
>
> Breier: I didn't know about an outing today. I didn't even know that the training was set for today till shelly told me. My concern is that you were out for vacation for two weeks and soon to be out for six. Your field time is extremely important right now. Ultimately I am concerned that I didn't know you were taking had the day to go golfing. I don't have challenges with anyone taking time off as long as I know. Half days. Picking up kids for school. Doctors apts. I willing to adjust, but I need to know.
>
> Plaintiff: Ok, I thought we talked about it on our call the other day and I emailed you about the meeting being today after I confirmed the date with Matt.

3

(Def. Ex. 3.)

On Friday, May 13, Breier contacted his boss, Christopher Porter, about initiating an investigation into Plaintiff's conduct. Amanda Hill conducted the investigation, which consisted of gathering background facts from Breier and conducting a telephone interview of Plaintiff on May 16. Breier participated in the interview. On May 16, after the interview, Breier made the decision to terminate Plaintiff. (Breier Dep 43.) Although Breier's decision was subsequently approved by members of the Human Resources Department, Breier's boss, Chris Porter, and Porter's boss, Brian Ducharme, Breier made the final decision on termination. (Breier Dep. 10.)

Plaintiff began her FMLA leave of absence on May 17. While she was on leave, she contacted Breier to ask whether she was going to be terminated. Plaintiff returned to work on June 27 and was terminated by Breier on June 29.

Plaintiff filed this action claiming retaliation under the Family and Medical Leave Act. Defendant has filed a motion for summary judgment.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendant carries its burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

The FMLA protects employees from retaliation or discrimination for exercising their rights under the FMLA. 29 U.S.C. § 2615(a)(2); *Hunter v. Valley View Local Sch.*, 579 F.3d 688, 690-91 (6th Cir. 2009). Specifically, the FMLA prohibits an employer from "discriminating against employees . . . who have used FMLA leave," or from using "the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c). "This prohibition includes retaliatory discharge for taking leave." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008) (quoting *Arban v. W. Pub. Corp.*, 345 F.3d 390, 403 (6th Cir. 2003)).

Where, as in this case, there is no direct evidence of FMLA retaliation, the Court applies the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Grubb v. YSK Corp.*, 401 F. App'x 104, 110 (6th Cir. 2010). Pursuant to this framework, Plaintiff bears the initial burden of establishing a prima facie case of FMLA retaliation, which requires her to show that:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).

There is no dispute that Plaintiff has satisfied the first three prongs of this test. She took FMLA leave with her employer's knowledge, and thereafter she was terminated from her employment. The parties' dispute centers on whether there was a causal connection between the protected FMLA activity and the adverse employment action.

**A. Causal Connection**

Defendant contends that Plaintiff cannot establish the last element of the prima facie case, i.e., a "causal link" connecting her FMLA leave and her termination. Plaintiff, on the other hand, contends that the temporal proximity between her exercise of her FMLA rights and her termination is sufficient to create a question of fact for trial as to causation.

The Sixth Circuit "'has embraced the premise that in certain distinct cases where the

temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.'" *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283-84 (6th Cir. 2012) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004)). "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of establishing a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). However, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id*.

In this case, Defendant learned of Plaintiff's protected activity in March or April, and terminated her in June. In *Seeger*, the court held that "the nearness in time between Seeger's return from FMLA leave and his termination – three weeks after his reinstatement and less than two months after he first notified CBT of his medical leave – suffices in these circumstances to meet the low threshold of proof necessary to establish a prima facie case of retaliatory discharge." 681 F.3d at 283. In *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007), the court held that the three-month time lapse between the plaintiff's request for FMLA leave and her termination on the day she was scheduled to return to work was sufficient to establish a causal connection at the prima facie stage. Under the relevant case

7

law, it appears that Plaintiff has satisfied the "low threshold of proof" necessary to establish her prima facie case.

Even assuming that temporal proximity alone is not sufficient in this case to establish causation for the purposes of a retaliation claim, Plaintiff has presented some additional evidence to connect her termination with her exercise of FMLA. She has presented evidence that when she confirmed her need for surgery and FMLA leave in April 2011, Breier responded that six weeks was a long time and asked her to reduce the leave to two weeks or to reschedule it. *See Bryson*, 498 F.3d at 571 (holding that temporal proximity together with evidence that supervisor was angry about the FMLA leave, was sufficient to meet the low threshold showing required for a prima facie case of FMLA retaliation). She has also presented evidence that Breier heightened his scrutiny of her by scheduling a counseling session soon after he received formal notification of her leave. *See Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435-36 (6th Cir. 2009) (holding that the combination of increased scrutiny with the temporal proximity of the termination occurring less than three months after protected activity was sufficient to establish the causal nexus needed to establish a prima facie case). While Plaintiff's evidence of a nexus between her termination and her FMLA leave is less than overwhelming, the Court is satisfied that there is sufficient evidence, viewed in the light most favorable to Plaintiff, from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action in retaliation for her exercise of her FMLA rights. *See Grubb*, 401 F. App'x at 113 ("[A]t the summary judgment stage, a

8

plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action 'under circumstances which give rise to an inference of unlawful discrimination.'") (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

B. **Legitimate Non-Discriminatory Reason**

If the plaintiff presents evidence to establish a prima facie case of FMLA retaliation, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Bryson*, 498 F.3d at 570 (citing *Macy v, Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007)); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993) ("'The defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful [retaliation] was not the cause of the employment action.") (quoting *Burdine*, 450 U.S. at 254-55 & n.8). In order to rebut the presumption of discrimination raised by the plaintiff's prima facie case, the employer must prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive. *Hunter*, 579 F.3d at 692.

Defendant has met this burden by offering evidence that it terminated Plaintiff for violating the Code of Business Conduct. (Def. Ex. 4, Charged Party Interview Guide; Def. Ex. 5, Questionnaire & Investigative Report; Hill Dep. 8-9; Def. Ex. 8, Mundis Decl.) Specifically, Defendant has presented evidence that it terminated Plaintiff after it made the

9

following findings during its investigation:

> The investigation clearly concludes that this employee had been recently coached on the importance of quality store visits and intentionally withheld from her manager that she would be playing golf during her usual business hours. In addition, by consuming alcohol during the golf outing and not arranging for alternate coverage for her customers, she placed the business at risk of either the customer's call being unanswered or answering the customer's calls while consuming alcohol.

(Mundis Decl. Ex. A.)

**C. Pretext**

Because Defendant has articulated a legitimate non-discriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to show that Defendant's proffered reason is a pretext for unlawful discrimination. *Bryson*, 498 F.3d at 570. In evaluating a claim of pretext, the Court considers whether Plaintiff has presented evidence which would enable a factfinder to conclude that Defendant's stated reason for terminating her is not the true reason and is simply a pretext for unlawful retaliation. *Id.* at 572. "A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger*, 681 F.3d at 285 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Regardless of how pretext is shown, the plaintiff "always bears the burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant [ ] intentionally discriminated against him." *Id.* (quoting *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011)). "[A] reason cannot . . . be a pretext

for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Seeger*, 681 F.3d at 285 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). The employer's motive is an integral part of the analysis "'because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights.'" *Daugherty*, 544 F.3d at 707 (quoting *Edgar v. JAC Prods, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)). In evaluating pretext, a court does not second-guess the business judgment of the employer, but simply evaluates whether the employer has given an honest explanation of its behavior. *Hedrick v. W. Res. Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004). Pretext cannot be based on temporal proximity alone, but temporal proximity may indicate pretext when accompanied by some "other, independent evidence." *Seeger*, 681 F.3d at 285 (citations omitted).

The most significant "other evidence" Plaintiff has produced is her statement that Breier gave her permission to attend the golf outing. If a jury were to find that Breier gave Plaintiff permission to attend the golf outing, the jury could also reasonably conclude that Breier's stated reasons for terminating Plaintiff (her misrepresentation that she was working when she was golfing, and her defiance of his directive not to attend the golf outing) have no basis in fact and were a pretext to cover up another motive. This, together with evidence that Breier exhibited some resistance to her taking FMLA leave, is sufficient to raise a question of fact for trial as to Defendant's true motive for terminating Plaintiff.

Defendant suggests that the Court should ignore Plaintiff's statement that she had

permission to attend the golf outing because it is "unsupported and self-serving." Defendant also suggests that Plaintiff's statement is not entitled to any weight because it is contradicted not only by Breier, but also by Iocca. The Court cannot ignore or discount Plaintiff's statement. "'In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited.'" *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010) (quoting *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts . . . are jury functions, not those of a judge.'" *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 578 (6th Cir. 2013) (quoting *Anderson*, 477 U.S. at 255). "'[W]hen the non-moving party presents direct evidence refuting the moving party's motion for summary judgment, the court must accept that evidence as true.'" *Schreiber*, 596 F.3d at 333 (quoting *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). "A court may not disregard evidence merely because it serves the interests of the party introducing it." *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010). A plaintiff's testimony alone may be sufficient to establish a genuine issue of material fact. *Id.*

Defendant also contends that even if there is a question of fact as to Breier's motive, Defendant's termination decision is unassailable under the honest belief rule because Plaintiff was only terminated after Defendant conducted an investigation.

To show pretext, Plaintiff must show more than a dispute over the facts upon which her discharge was based; she must show that Defendant did not "honestly believe" in the

12

proffered non-discriminatory reason for its adverse employment action. *See McConnell v. Swifty Transp. Inc.*, 198 F. App'x 438, 442 (6th Cir. 2006). "In order to determine whether the defendant had an 'honest belief' in the proffered basis for the adverse employment action, we consider whether the employer can establish its 'reasonable reliance' on the particularized facts that were before it at the time the decision was made." *Id.* "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009) (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713 (6th Cir. 2007)). Because Breier was the individual who made the complaint, gave the investigator the background facts, participated in the investigation, and made the ultimate decision to terminate Plaintiff, questions of fact as to Breier's knowledge of events concerning the golf outing raise a question of fact as to whether the honest belief rule applies.

The issue of Defendant's motive for terminating Plaintiff can be resolved only by assessing the credibility of the witnesses and by weighing the evidence. Accordingly, it must be decided by the trier of fact at trial and not by this Court on a motion for summary judgment. Consequently, Defendant's motion for summary judgment must be denied.

An order consistent with this opinion will be entered.


Dated: <u>April 17, 2013</u>                    /s/ Robert Holmes Bell
                                                                                                                           ROBERT HOLMES BELL
                                                                                                                            UNITED STATES DISTRICT JUDGE